UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Finbar McGarry,
    Plaintiff,

    v.                                     Civil Action No. 1:09-CV-128

Andrew Pallito, Greg Hale, Richard Byrnes,
Richard Gallow, Joe Wolske, John Cannon,
CO Forcier, Sherylyn Matthans, Jeff Cobb,
Paul Cross, Samuel Santos, Michael Liff,
Various Turnkeys, Evelyn Cushing,
Various Lawyers, William Sorrell,
State of Vermont,
    Defendants.

## REPORT AND RECOMMENDATION
(Docs. 3, 4 and 15)

Plaintiff Finbar McGarry, proceeding *pro se*, brings this action claiming that his federal constitutional and statutory rights have been violated. McGarry's claims arise out of his time as a pre-trial detainee at Chittenden Regional Correctional Facility ("CRCF"). Briefly stated, he alleges that the defendants interfered with his ability to communicate with counsel, and that he was forced to work in the prison laundry. He brings his claims under the First, Sixth, Thirteenth and Fourteenth Amendments, as well as the Fair Labor Standards Act ("FLSA").

Pending before the Court are McGarry's motions for preliminary injunctive relief and the defendants' Rule 12(b)(6) motion to dismiss. For the reasons set forth below, I recommend that the motions for preliminary injunctive relief be DENIED, the motion to

dismiss be GRANTED, and that the case be DISMISSED.

## Factual Background

When he filed his complaint, McGarry was a pre-trial detainee at CRCF in South Burlington, Vermont. He was placed at CRCF after his arrest in December 2008. He reports that he was not on parole or probation at the time of his arrest.

His first claim is that prison officials barred him from receiving Newsweek magazine. He began subscribing to Newsweek in February 2009, and received the first few issues. When the magazines stopped arriving, he made inquiries and was allegedly told that magazines were not allowed. McGarry filed a grievance and was informed that he must fill out a "package request form." (Doc. 2 at 3.) McGarry now claims that requiring him to fill out a request form served no penological interest, and that confiscation of his magazines violated his First Amendment rights. *Id.* at 9.

McGarry also alleges that Department of Corrections personnel confiscated several mailing envelopes. He does not claim that the contents of the envelopes were taken, but rather that the envelopes themselves had return addresses and postmarks, and were otherwise useful for "storage of documents." *Id.* at 3. McGarry filed a grievance requesting the return of his envelopes, but the grievance was denied.

McGarry next claims that CRCF has a designated "lawyer phone," but that the phone is in a public area that does not allow for confidential conversations. He claims that he used the lawyer phone to speak with attorneys both about his criminal case and about a potential civil action. McGarry grieved the fact that the phone was not private,

and DOC Commissioner Andrew Pallito offered to let him use "the lawyer room" to speak on the phone with the attorney of record in his criminal case. *Id.* at 5. Notwithstanding this accommodation, McGarry claims that the DOC violated his Sixth Amendment right to counsel.

Much of McGarry's complaint is devoted to the fact that he was allegedly required to work while in prison. He claims that after 30 days at CRCF, both convicted inmates and pre-trial detainees are moved to "House 1" where they are required to work six to fourteen hours per day at twenty-five cents per hour. Refusal to work "is a violation of CRCF's written rules . . . results in an Inmate Disciplinary Report, and may subject an inmate to administrative segregation in the Alpha or Foxtrot Unit." *Id.* at 5. McGarry contends that forcing him to work constituted involuntary servitude under the Thirteenth Amendment, and that the DOC is liable under the FLSA for failing to pay minimum wage.

Specifically, McGarry alleges that while in House 1, he was instructed to wash inmate laundry three days a week in six hour shifts. At times he had to work fourteen hour shifts "because washing machines and dryers were frequently broken." *Id.* When he developed a neck infection while working, he was allegedly denied a "work excuse note" even though another inmate was granted medical leave. *Id.*

McGarry asserts that his work was like regular employment (and therefore covered under the FLSA) in that he was required to "punch a time clock" and pay sheet records were maintained by the DOC. His work performance was supervised by DOC personnel,

3

and the DOC had the ability to hire and fire inmates.  McGarry himself was threatened with firing "if he lost any more socks." *Id.* at 7.

When McGarry filed a grievance alleging violations of the Thirteenth Amendment and the FLSA, the grievance was rejected for failure to "'mention any grievable event or provide information that can be investigated.'" *Id.*  McGarry appealed, and as a result was moved to a section of CRCF where he was no longer required to work.  Nonetheless, he now argues that the response to his appeal "indicate[d] that Vermont DOC Policy provided that pretrial detainees and convicted prisoners alike work." *Id.*

Shortly after filing his federal complaint, McGarry filed two motions for a preliminary injunction, the first of which asks the court to enjoin the DOC from "confiscating his NewsWeek [sic], Rolling Stone, and Prison Legal News magazines." (Doc. 3 at 1.)  The second motion asks that the Court bar the DOC from forcing him to perform "prison labor." (Doc. 4 at 1.)  McGarry subsequently filed an amended complaint alleging that he contracted an infection while working in the laundry.  He asserts that this injury enhances his claim for damages under the Thirteenth Amendment. (Doc. 18 at 1.)  The complaint itself seeks both injunctive relief and damages.

The Court's docket indicates that McGarry is not currently incarcerated.

## Discussion

**I.     Motion to Dismiss: Legal Standard**

The defendants have moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(6),

arguing that McGarry has failed to state a claim upon which relief may be granted. As such, their motion tests the legal rather than the factual sufficiency of McGarry's complaint. *See, e.g., Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000) ("At the Rule 12(b)(6) stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims.'") (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir. 1998)). Accordingly, the Court must accept the factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Roth v. Jennings*, 489 F.3d 499, 501 (2d Cir. 2007).

The Supreme Court has held that the standard governing a complaint's legal sufficiency is one of "plausibility." *Bell Atlantic Corp. Twombly*, 550 U.S. 544, 556-60 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). This standard does not require a probability of liability, but "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* Pleadings drafted by a *pro se* party must be liberally construed. *Fernandez v. Chertoff*, 471 F.3d 45, 51 (2d Cir. 2006).

II. **Sovereign Immunity**

The defendants first argue that damages claims against them in their official capacities, as well as any claims against the State of Vermont itself, are barred under the doctrine of sovereign immunity and the Eleventh Amendment. The Eleventh Amendment

5

prohibits suits for damages brought in federal court against unconsenting states or state officials sued in their official capacities. *See Edelman v. Jordan*, 415 U.S. 651, 663 (1974). A state may waive its Eleventh Amendment immunity so long as the waiver is unequivocally expressed. *Atascadero State Hospital v. Scanlon*, 473 U.S. 234 (1985). Additionally, Congress may abrogate the Eleventh Amendment pursuant to Section 5 of the Fourteenth Amendment. *Fitzpatrick v. Bitzer*, 427 U.S. 445, 456 (1976).

Congress has not abrogated Vermont's sovereign immunity from a § 1983 suit in federal court, and the State of Vermont has expressly preserved its sovereign immunity under the Eleventh Amendment. *See, e.g.*, 12 V.S.A. § 5601(g). Therefore, any federal constitutional claims for damages brought against the individual defendants in their official capacities should be DISMISSED. Because the Eleventh Amendment protects the State of Vermont regardless of the nature of the relief sought, *all* claims against the State should be DISMISSED. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978).

As to the claims for injunctive relief, the Eleventh Amendment does not prohibit a suit against state officials in their official capacities when the suit seeks prospective injunctive relief. *See Ex Parte Young*, 209 U.S. 123, 155-56 (1908); *Henrietta D. v. Bloomberg*, 331 F.3d 261, 287-88 (2d Cir. 2003). Under *Ex Parte Young*, there is "a limited exception to the general principle of sovereign immunity [that] allows a suit for injunctive relief challenging the constitutionality of a state official's actions in enforcing state law under the theory that such a suit is not one against the State, and therefore not barred by the Eleventh Amendment." *Ford v. Reynolds*, 316 F.3d 351, 354-55 (2d Cir.

2003) (quoting *CSX Transp., Inc. v. N.Y. State Office of Real Prop. Servs.*, 306 F.3d 87, 98 (2d Cir. 2002)). However, "[i]t is settled in this Circuit that a transfer from a prison facility moots an action for injunctive relief against the transferring facility." *Prins v. Coughlin*, 76 F.3d 504, 506 (2d Cir. 1996); *Young v. Coughlin*, 866 F.2d 567, 568, n. 1 (2d Cir. 1989). The record in this case shows that McGarry is no longer incarcerated, and there is no indication that he will again be made to work while a pre-trial detainee. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (exception to mootness doctrine where action is "capable of repetition, yet evading review").[1] His claims for injunctive relief are, therefore, moot, and should be DISMISSED.

## III. First and Sixth Amendment Claims

McGarry claims that the confiscation of his envelopes and the placement of the "lawyer phone" in a public place both violated his constitutional rights. The defendants argue that McGarry has failed to show any injury, and that McGarry's ability to retain private counsel in his criminal case "undermines any allegation that he has been denied adequate access to the courts or effective assistance of counsel." (Doc. 15 at 6.)

McGarry's allegations raise distinct First and Sixth Amendment issues. *See Bourdon v. Loughren*, 386 F.3d 88, 95 (2d Cir. 2004). Under the First Amendment, the question is whether McGarry was provided "a reasonably adequate opportunity to present

---

[1] McGarry alleges in his complaint that several weeks after he was relieved from work duty, he was told by a Correctional Officer that he was going to be returned to House 1 and that he would have to work when he arrived there. McGarry responded by displaying "a note from Byrne, and was allowed to return to House 2." (Doc. 2 at 8.)

7

claimed violations of fundamental constitutional rights." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). In order to establish such a claim, a plaintiff must assert "actual injury." *Lewis v. Casey*, 518 U.S. 343, 350 (1996). In other words, McGarry must allege that the defendants "hindered [his] efforts to pursue a legal claim." *Davis v. Goord*, 320 F.3d 346, 351 (2d Cir. 2003) (citations omitted). Where the plaintiff claims that prison officials interfered with either his legal papers or his communications with counsel, "the Court may not presume harm, and some showing of impaired access is required." *Arce v. Walker*, 58 F. Supp. 2d 39, 44 (W.D.N.Y. 1999).

As to McGarry's claim that envelopes were taken from him, his allegation that the envelopes had "return addresses and post marks" suggests that they were to be used to respond to the senders. The envelopes in question were sent by attorneys and the Court. Consequently, his claim appears to be that by confiscating the envelopes, prison officials impeded his ability to respond to those parties.

McGarry does not claim that, in these envelopes, he was unable to communicate effectively with counsel or the Court. Specifically, he does not cite any defense or constitutional cause of action that he was unable to assert as a result of being deprived free envelopes and postage. Nor does he claim that his inability to store documents in those envelopes violated his constitutional rights. Accordingly, he has failed to successfully allege that by denying him access to the envelopes, prison officials violated his First Amendment rights.

Similarly, McGarry has failed to assert any injury arising out of his alleged

8

inability to have private conversations with counsel. With respect to his criminal case, he claims that he was unable to have "detailed" conversations with attorneys on the prison's "lawyer phone," but does not claim that he was impaired in his ability to present a defense. Moreover, he concedes in his complaint that the DOC Commissioner provided an accommodation by allowing him to use a private room for phone conversations with his attorney of record.

With respect to any potential civil actions, McGarry alleges that he tried to speak with an investigator from Prisoners' Rights about his "involuntary servitude" claim, and a private attorney "about representation for a potential medical malpractice issue." (Doc. 2 at 4.) However, he does not allege any facts to show that the defendants effectively frustrated his efforts to pursue a non-frivolous constitutional claim in either regard. *See Lewis*, 518 U.S. at 353. Indeed, the fact that the instant case was timely filed and is now being considered belies his claim that access to the courts was impeded. The Court should therefore find that McGarry's First Amendment claims are without merit.

The Sixth Amendment issue is whether the confiscation of envelopes and the placement of the "lawyer phone" denied McGarry his right to assistance of counsel. *See Bourdon*, 386 F.3d at 95. As noted in *Bourdon*, "the Sixth Amendment only applies to a defendant's trial and first appeal as of right, not to appeals afforded on a discretionary basis, collateral proceedings, or civil proceedings such as civil rights claims challenging prison conditions." 386 F.3d at 96 (citing *Pennsylvania v. Finley*, 481 U.S. 551, 555-57 (1987)). And unlike the First Amendment analysis, the plaintiff need not show an "actual

injury" to have standing for a Sixth Amendment claim. *Benjamin v. Fraser*, 264 F.3d 175, 184-86 (2d Cir. 2001). Instead, the Court must look at whether the defendants' actions "unjustifiably obstructed" McGarry's access to his attorneys, and evaluate the practice in light of "the central objective of prison administration." *Id.* at 187 (recognizing due process right of access to courts as well as Sixth Amendment right to counsel) (citations omitted).

In *Benjamin*, the Second Circuit found that "unreasonable interference with an accused person's ability to consult counsel is itself an impairment of " that person's Sixth Amendment rights. 264 F.3d at 185. Here, McGarry claims that he had several conversations with a variety of attorneys, and that he was ultimately able to retain Mark Kaplan, Esq. as defense counsel. He also concedes that the DOC eventually allowed him to make calls to his counsel from a private room. In light of this concession, there is no basis for a claim that McGarry's access to his attorney was "unjustifiably obstructed" given the "central objective of prison administration." *Id.* at 187. This conclusion applies equally to McGarry's envelope-confiscation claim, since any alleged interference with attorney-client communications was alleviated by the DOC's phone accommodation.

In sum, it appears from the Complaint that a phone was provided for inmates to make calls to counsel, and when it became apparent that privacy was an issue for one inmate, the situation was remedied.[2] Accepting these facts as true, I recommend that

---

[2] The DOC's remedy stands in stark contrast to the facts in *Johnson-El v. Schoemehl*, 878 F.2d 1043, 1051 (8th Cir. 1989), a case that McGarry describes in his complaint as "very similar" to his own. (Doc. 2 at 10.) In *Johnson-El*, inmates were effectively allowed to call the office of their respective

McGarry's Sixth Amendment claim be DENIED.

## IV. Involuntary Servitude and FLSA Claims

Both McGarry's Thirteenth Amendment claim of involuntary servitude and his FLSA claim are barred as a matter of law. In order to state a claim under the Thirteenth Amendment, a plaintiff must demonstrate he has been subjected to "compulsory labor akin to African slavery which in practical operation would tend to produce like undesirable results." *Butler v. Perry*, 240 U.S. 328, 332 (1916). In evaluating claims under the Thirteenth Amendment, a court must take a "contextual approach," considering such factors as the nature and amount of work demanded, and the purpose for which it is required. *See Immediato v. Rye Neck School District*, 73 F.3d 454, 459-60 (2d Cir. 1996).

The Second Circuit has held that states do not violate the Thirteenth Amendment when they require inmates to "perform without compensation certain chores . . . of a normal housekeeping type and kind." *Jobson v. Henne*, 355 F.2d 129, 131 (2d Cir. 1966) (action brought by inmate of state mental institution). This language has been applied in the context of prisons and, or particular relevance in this case, pretrial detainees. *See, e.g., Ford v. Nassau County Executive*, 41 F. Supp. 2d 392, 401 (E.D.N.Y. 1999).

McGarry claims that he was forced to work in the prison laundry. His regular shift was six hours a day three days a week, although at times he was required to work up to

---

attorneys only once every two weeks, and if the attorney was away from the office or the phone was busy, the inmate had to wait another two weeks to try again. 878 F.2d at 1051. Furthermore, when the *Johnson-El* plaintiffs did speak with their attorneys, either on the phone or in person, they were not allowed a private space, would have to yell in order to be heard over the prison noise, and were always within hearing distance of guards and other jail staff. *Id.*

fourteen hours. In *Jobson*, the Second Circuit ruled that allegations of a sixteen hour workday might constitute a violation. 355 F.2d at 132. McGarry suggests that the norm was six hours, and that longer shifts were only necessary when washing machines and dryers were broken.

In any event, the complaint does not allege labor that was "akin to African slavery." *Butler*, 240 U.S. at 332. As the *Ford* court noted in denying relief under the Thirteenth Amendment to a pretrial detainee who was required to distribute prison food, "[]the Thirteenth Amendment was drafted and incorporated into the Constitution to rid our nation of the many evils associated with the institution of slavery . . . . [The plaintiff's] own alleged assistance in the distribution of food, for which he received at least some consideration, does not rise to the level of indignity and degradation that accompanied slavery. To hold otherwise would trivialize the pain and anguish that the Thirteenth Amendment sought to remedy." *Ford*, 41 F. Supp. 2d at 401. Because the same may be said here of McGarry's laundry claim, I recommend that his Thirteenth Amendment "involuntary servitude" claim be DISMISSED.

Although the Thirteenth Amendment may not apply here, McGarry was also protected as a pretrial detainee by the Due Process Clause. *Bell v. Wolfish*, 441 U.S. 520, 545 (1979).[3] In *Bell*, the Supreme Court held that pre-trial detainees may be subjected to "the restrictions and conditions of the detention facility so long as those conditions and

---

[3] McGarry does not identify due process as an independent claim, but does cite his rights under *Bell v. Wolfish*. (Doc. 2 at 11.)

restrictions do not amount to punishment, or otherwise violate the Constitution." 441 U.S. at 536-37. "'[A]bsent a showing of express intent to punish,' the determination as to whether such conditions amount to punishment will generally turn on whether a purpose is tendered, other than punishment, that is rationally related to those conditions and whether the invasions of the detainee's liberty interests are excessive." *Ford*, 41 F. Supp. 2d at 397 (quoting *Lareau v. Manson*, 651 F.2d 96, 103 (2d Cir. 1981)).

In this case, there is no allegation of either excess or intent to punish. As in *Ford*, the plaintiff here "does not claim that he was directed to [work] in response to any conduct, or misconduct, on his part." 41 F. Supp. 2d at 397. In fact, he claims that it was common practice to be sent to House 1 after 30 days, and that he was treated the same as others at CRCF. Therefore, "the punishment aspect of his claim could derive from only two sources. One, being required to [work in the laundry] could itself be understood to be punishment. Two, being given the choice between [work and a Disciplinary Report] could be deemed punishment." *Id.*

Analyzing the first of these possibilities, the *Ford* decision found that helping to feed inmates served "a legitimate government purpose," and the fact that the plaintiff was rewarded for his work with extra food was "not in keeping with an intent to punish. Moreover, the kinds of chores Ford did, handing out food, mopping and sweeping, more closely resemble those that have been held to be allowable reasonable 'housekeeping duties' than those held to be forced labor." *Id.*

This same logic applies here. McGarry was compensated for his work, thus

13

countering any inference that he was being punished. Further, his laundry work was clearly a "housekeeping duty," and not the sort of work that would be considered punitive. *See id.* at 398 ("While help with the 'chores' around the detention center is a reasonable requirement of those who live there, tasks which carry with them demeaning connotations might amount to punishment – for instance, requiring a detainee to clean a toilet with a toothbrush."). The Court should therefore conclude that requiring a pre-trial detainee to work does not, standing alone, constitute punishment.

The second possibility is that the threat of punishment constituted a constitutional deprivation. While the Second Circuit has not ruled on the question, other circuits have held that threatening a pretrial detainee with segregation or lock down if he refuses to work does not constitute a due process violation. *See Hause v. Vaught*, 993 F.2d 1079, 1085 (4th Cir. 1993) (pretrial detainee threatened with 48 hours lock down if he refused to clean a "module" several times per day); *Bijeol v. Nelson*, 579 F.2d 423, 425 (7th Cir. 1978) (requiring pretrial detainees to participate in general housekeeping duties was permissible even though detainees were threatened with segregation if they did not participate).[4] "As the only relevant law available seems to hold that forcing a pretrial detainee to choose between segregation and 'housekeeping' is not a violation of due process," and assuming that McGarry's complaint intends to set forth a due process claim,

---

[4] As the *Ford* decision noted, the Second Circuit has cited *Bijeol* with approval, albeit in a different context. 41 F. Supp. 2d at 397-98 (citing *Buthy v. Comm'r of the Office of Mental Health of New York State*, 818 F.2d 1046 (2d Cir. 1987)).

14

he nonetheless "has no remedy available here." *Ford*, 41 F. Supp. 2d at 398.

With respect to McGarry's FLSA claim, courts have held that the FLSA is "inapplicable to pretrial detainees working for prison authorities since, like prisoners, they are not employees under the FLSA." *Tourscher v. McCullough*, 184 F.3d 236, 243 (3d Cir. 1999). The Eleventh Circuit reasoned as follows:

> Focusing on the economic reality of the situation in its entirety, we conclude that [a pretrial detainee] is not an "employee" under the FLSA. The purpose of the FLSA is to protect the standard of living and general well-being of the American worker. Because the correctional facility meets [the detainee's] needs, his "standard of living" is protected. In sum, "the more indicia of traditional, free-market employment the relationship between the prisoner and his putative 'employer' bears, the more likely it is that the FLSA will govern the employment relationship." [The detainee's] situation does not bear any indicia of traditional free-market employment contemplated under the FLSA. Accordingly, we hold that [he] and other pretrial detainees in similar circumstances are not entitled to the protection of the FLSA minimum wage requirement.

*Villarreal v. Woodham*, 113 F.3d 202, 207 (11th Cir. 1997) (citation omitted); *compare Danneskjold v. Hausreth*, 82 F.3d 37, 43 (2d Cir. 1996) (prison labor not subject to FLSA). This Court should find this reasoning persuasive, and McGarry's FLSA claim should be DISMISSED.

## V. Leave To Amend

When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated. *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) (citing *Branum v. Clark*, 927 F.2d 698, 705 (2d Cir. 1991)). However, a court

15

need not permit amendment when, as in this case, the complaint gives no indication that a valid claim might be stated. *Davis v. Goord*, 320 F.3d 346, 352 (2d Cir. 2003).

Here, McGarry has already amended his complaint once since the defendants filed their motion to dismiss. In both his initial and amended complaints, McGarry fails to give any indication of a either a First Amendment injury or of a denial of his Sixth Amendment right to counsel. In fact, the complaint suggests that he was able to access magazines and other materials by filling out a request form, and that his request for a private means of communicating with counsel was accommodated.

Further, McGarry's Thirteenth Amendment claim is clearly without merit, as his work three days a week in the prison laundry was nothing like the slavery that gave rise to the enactment of that Amendment. The facts in the complaint do not suggest a valid due process claim, and the case law clearly holds that the FLSA does not apply in the prison context. Any claims for injunctive relief are now moot, as McGarry is no longer incarcerated as a pretrial detainee, and for reasons discussed above, there is no legal basis for his damages claims. I therefore recommend that McGarry not be granted leave to amend, and that this case be DISMISSED.[5]

## Conclusion

For the reasons set forth above, I recommend that the defendants' motion to dismiss (Doc. 15) be GRANTED, that the plaintiff's motions for preliminary injunctions

---

[5] Because I am recommending dismissal on the grounds set forth above, I see no need for the Court to consider the defendants' remaining arguments.

(Docs. 3 and 4) be DENIED as moot, and that this case be DISMISSED.

Dated at Burlington, in the District of Vermont, this 19th day of November, 2009.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within 10 days after service by filing with the clerk of the court and serving on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See* Local Rules 72.1, 72.3, 73.1; 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b), 6(a) and 6(d).