UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Finbar McGarry,

       Plaintiff,

       v.                          Civil Action No. 1:09-CV-128

Andrew Pallito, et al.,

       Defendants.

## REPORT AND RECOMMENDATION
(Doc. 54)

Plaintiff Finbar McGarry has filed this action, pursuant to 42 U.S.C. § 1983, alleging that Defendant Vermont Commissioner of Corrections Andrew Pallito, various corrections officials, and others, violated his right as a pretrial detainee to be free from involuntary servitude as protected by the Thirteenth Amendment of the United States Constitution. Specifically, McGarry alleges that while he was detained at the Chittenden Regional Correction Facility ("CRCF"), Defendants compelled him to work in the prison laundry under threat of physical restraint and legal process.

Currently pending before the Court is Defendants' Motion to Dismiss, in which they allege that the case should be dismissed for McGarry's failure to allege a physical injury or the personal involvement of all Defendants. (Doc. 54.) McGarry has filed a response (Doc. 55), to which Defendants filed a reply (Doc. 56).

For the reasons that follow, Defendants' Motion to Dismiss for failure to allege physical injury should be DENIED. In addition, I recommend that Defendants' Motion to Dismiss on the basis of lack of personal involvement be GRANTED with respect to Defendants Sorrell, Cannon, "CO Forcier," Santos, Liff, and "Various Attorneys," but DENIED as it relates to all remaining Defendants.

## Factual and Procedural Background

In his Complaint, McGarry alleged a number of constitutional and statutory violations that arose from his period of pretrial detention. (Doc. 2.) In a previous Report and Recommendation (Doc. 26), which was fully adopted over objection (Doc. 34), this Court dismissed McGarry's Thirteenth Amendment claim, as well as four others: (1) alleged violation of his first Amendment rights related to access to reading materials; (2) alleged violation of his First and Sixth Amendment rights arising from alleged restricted access to his mail and his attorney; (3) alleged violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201; and (4) alleged violation of the due process clause of the Fourteenth Amendment arising from his forced labor. McGarry, in the words of the Second Circuit, "appeal[ed] only from the dismissal of his Thirteenth Amendment claim," and, as a consequence, the Second Circuit reversed the dismissal only as to that claim. *See McGarry v. Pallito*, 687 F.3d 505, 508 n.2 (2d Cir. 2012). Given that the Thirteenth Amendment claim alone remains, only facts relevant to that claim, drawn from McGarry's *pro se* pleadings, will be recited below.

From December 2008 to June 2009, McGarry was held as a pretrial detainee at CRCF after his arrest and the denial of his request for bail. (Doc. 2 at 2.) By McGarry's

description, CRCF holds about 200 inmates, including both pretrial detainees and convicted prisoners. (*Id*. at 5.) CRCF is divided into different living units, or "houses," to which inmates are assigned by the facility administration. (*Id*.) Inmates in House 1, according to McGarry, are "required to work . . . for 6 to 14 hours [per] day at 25 cents per hour." (*Id*.) The work arrangement is relatively formalized, as CRCF uses a time clock, requires inmates to submit time cards, keeps employment records, and deposits pay sheets in inmate accounts. (*Id*. at 6.) Corrections officers are also empowered to hire and fire inmates; McGarry himself was threatened with firing "if he lost any more socks." (*Id*. at 7.) Inmates are made to work regardless of whether they are pretrial detainees or convicted prisoners. (*Id*. at 5.) Refusal to work is a violation of CRCF's written rules and can result in the filing of an "Inmate Disciplinary Report," which may, in turn, subject the inmate to "administrative segregation" or potentially even affect his release date. (*Id*.)

McGarry was moved to House 1 in mid-February 2009. (*Id*. at 6.) At that time, he was instructed to work in the prison laundry "three days a week for six hour shifts." (*Id*.) His shifts were often extended as long as fourteen hours, however, due to broken washing machines and dryers. (*Id*.) While he worked in the laundry, he developed a "serious neck infection" (*id*.), manifesting as a "series of reoccurring lesions" (Doc. 21 at 1), as a result of being unable to wash his hands after a shift because "the bathroom adjacent to the laundry room was bolted shut" (Doc. 18 at 1). According to McGarry, "[n]o hand cleaning products were available to inmate workers," although such products were made available to DOC staff and contractors. (*Id*.) After developing the infection,

he requested a "work excuse note" from the facility's doctor, but that request was denied. (Doc. 2 at 6.)  By his description, McGarry "suffered physical pain as a result of working while sick."  (*Id*. at 7.)  He was placed on the antibiotic "Keflex" for twenty-four days because of the infection, but continued to work even during this treatment.  (*Id*.)  Since that time, McGarry "has had repeated subsequent skin infections requiring antibiotics." (Doc. 18 at 1.)  In June 2009, the infection was diagnosed as MRSA.[1]  (*Id*.)  McGarry was prescribed another antibiotic to treat the infection after this diagnosis.  (Doc. 21 at 1.) On August 29, 2009, McGarry had outpatient surgery on growths under his arm and on his right upper leg which had both tested positive for MRSA.  (Doc. 24 at 1.)[2] Ultimately, the pending case against McGarry, for which he was detained at CRCF, was dismissed.  (Doc. 31 at 2.)  *See McGarry*, 687 F.3d at 509.  McGarry is no longer incarcerated.  (Doc. 20.)

Overall, McGarry worked 120 hours from February 15, 2009 to March 25, 2009. (Doc. 2 at 6.)[3]  According to McGarry, he performed the work because he was told it was "mandatory" and that "punishment would result if he refused to work in the form of administrative segregation and that an Inmate Disciplinary Report would result," which

---

[1]  "MRSA" is an acronym for methicillin-resistant staphylococcus aureus, a type of staph infection.  MRSA is a strain of staph that is resistant to the broad-spectrum antibiotics commonly used to treat ordinary staph infections, and, as a consequence, can sometimes become life threatening. Information *available at* www.mayoclinic.com.

[2]  McGarry has filed various grievance forms and medical records under seal with this Court in an effort to prove his medical issues and document his attempts to grieve the working conditions.  (Doc. 21-1; Doc. 23-1; Doc. 24-1.)

[3]  McGarry also claims that he was returned to House 1 in May 2009 and forced to do a "hallway job" (Doc. 5 at 1), which he also described as a "janitorial job" (Doc. 17 at 2).  At some point, this work was terminated because McGarry was informed that there was a "hold" on him such that he did "not have to work at th[at] time."  (Doc. 5 at 1.)

would affect his release date.  (*Id*. at 7-8.)  McGarry filed numerous grievances and wrote

multiple letters, after which he was eventually returned to a housing unit in which no

work was required.  (*Id*. at 7.)

McGarry filed a *pro se* Complaint against various prison officials on

May 19, 2009 alleging that forcing him to work in the prison laundry constituted

involuntary servitude under the Thirteenth Amendment.  (Doc. 2.)  Specifically, McGarry

filed suit against Defendants Andrew Pallito (Vermont Department of Corrections

Commissioner), Greg Hale (CRCF Superintendent), Richard Byrne, Richard Gallow, Joe

Wolske, John Cannon, "CO Forcier", Sherylyn Matthans, Jeff Cobb, Paul Cross, Samuel

Santos, Michael Liff, "Various Turnkeys" at CRCF, Evelyn Cushing, "Various

Attorneys" at the Vermont Department of Labor, William Sorrell (Vermont Attorney

General), and the State of Vermont.  (Doc. 2 at 1-2.)  All Defendants were sued in both

their individual and official capacities.[4]  (*Id*. at 1.)  McGarry seeks $960 for "actual

wages earned," $1 million in "actual damages," and $10 million in "punitive damages."[5]

Although he filed suit *pro se*, McGarry is now represented by counsel.  (Doc. 45.)

Defendants moved to dismiss under Federal Rule of Civil Procedure 12(b)(6) for

failure to state a claim.  (Doc. 15.)  A Report and Recommendation issued

---

[4]  In the previously-adopted Report and Recommendation, all official capacity claims were
dismissed on the basis that such suits were barred under the doctrine of sovereign immunity and the
Eleventh Amendment.  (Doc. 26 at 5-7.)  McGarry did not appeal from this portion of the dismissal.
(Doc. 54 at 4.)  *See McGarry* 687 F.3d  at 508 n.2 (2d Cir. 2012) ("McGarry appeals only from the
dismissal of his Thirteenth Amendment claim.").  As a result, only Thirteenth Amendment claims against
each Defendant in their individual capacity remain, and the claim against the State of Vermont is entirely
extinguished.

[5]  In his Complaint, McGarry also sought various forms of injunctive relief (Doc. 2 at 15), which
were previously dismissed as moot because McGarry is no longer in pretrial detention.  (Doc. 26 at 7.)

recommending, among other things, that the Thirteenth Amendment claim be dismissed on the merits. (Doc. 26.) The Report and Recommendation was adopted in full and the Complaint was dismissed. (Doc. 34.) McGarry appealed, and the United States Court of Appeals for the Second Circuit reversed, addressing only the merits of the Thirteenth Amendment claim, as well as the applicability of qualified immunity. (Doc. 44.) After the case was remanded to the District Court, Defendants filed the instant Motion to Dismiss. (Doc. 54.)

## Discussion

Title 42 U.S.C. § 1983 provides a civil claim for damages against "[e]very person who, under color of any statute . . . of any State . . . subjects, or causes to be subjected, any citizen . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. "The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). To succeed on a § 1983 claim, a plaintiff must allege: "(1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of h[is] federal statutory rights, or h[is] constitutional rights or privileges." *Annis v. County of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993) (citing *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)); *see also Albright v. Oliver*, 510 U.S. 266, 271 (1994).

Defendants have moved to dismiss on two grounds, claiming that McGarry's Thirteenth Amendment claim should be dismissed because (1) he has failed to allege sufficient physical injury as required by the Prison Litigation Reform Act ("PLRA"), and (2) he has failed to allege the personal involvement of Defendants in the alleged Thirteenth Amendment violation.

## I.    Motion to Dismiss Legal Standard

To survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must "provide the grounds upon which [its] claim rests." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). A plaintiff must also allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also* Fed. R. Civ. P. 8(a)(2) (pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief"). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As described by the Supreme Court in *Iqbal* and *Twombly*, this does not require a plaintiff to provide "detailed factual allegations" to support his claims, but the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. The plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. If the plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

In assessing the adequacy of the pleadings, a court must accept all factual assertions as true and draw all reasonable inferences in favor of the plaintiff. *See Wilson v. Merrill Lynch & Co., Inc.*, 671 F.3d 120, 128 (2d Cir. 2011); *ATSI Commc'ns*, 493 F.3d at 98. A complaint is properly dismissed, where, as a matter of law, "the allegations in [it], however true, could not raise a claim of entitlement to relief." *Twombly*, 550 U.S. at 558. Conversely, this presumption of truth "is inapplicable to legal conclusions," and therefore the court need not credit "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678; *see also Faber v. Metropolitan Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) ("We are not . . . bound to accept conclusory allegations or legal conclusions masquerading as factual conclusions" (citation omitted)).

The question on a Rule 12(b)(6) motion to dismiss "'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims'" raised in the complaint. *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995) (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). In essence, the question is whether some plausible narrative supports the plaintiff's claim such that the case merits discovery; the Federal

Rules of Civil Procedure "do[] not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Iqbal*, 556 U.S. at 678-79.

In cases involving a *pro se* plaintiff, which McGarry was at the time he filed suit, the Court must construe the complaint "liberally," *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), by "reading such submissions 'to raise the strongest arguments they suggest.'" *Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (quoting *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994)). "This policy of liberally construing *pro se* [complaints] is driven by the understanding that '[i]mplicit in the right of self-representation is an obligation on the part of the court to make reasonable allowances to protect *pro se* litigants from inadvertent forfeiture of important rights because of their lack of legal training.'" *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 475 (2d Cir. 2006) (quoting *Traguth v. Zuck*, 710 F.2d 90, 95 (2d Cir. 1983)). In assessing *pro se* complaints challenged by Rule 12(b)(6) motions to dismiss, courts "apply[] a more flexible standard to evaluate their sufficiency than we would when reviewing a complaint submitted by counsel." *Lerman v. Bd. of Elections in the City of N.Y.*, 232 F.3d 135, 140 (2d Cir. 2000). "This is particularly so when the *pro se* plaintiff alleges that h[is] civil rights have been violated." *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008).

Nonetheless, even *pro se* litigants—as McGarry was at the time he filed this action—"remain subject to the general standard applicable to all civil complaints under the Supreme Court's decisions in *Twombly* and *Iqbal*." *Brickhouse v. City of New York*, No. 09 CIV. 9353(NRB), 2010 WL 3341845, at *2 (S.D.N.Y. Aug. 16, 2010); *see Bisson*

*v. Martin Luther King Jr. Health Clinic*, No. 07-5416-cv, 2008 WL 4951045, at *1 (2d

Cir. Nov. 20, 2008); *see also Triestman*, 470 F.3d at 477 ("*pro se* status does not exempt

a party from compliance with relevant rules of procedural and substantive law").

## II.     Physical Injury

Defendants first argue that McGarry's claim should be dismissed because he has

failed to allege physical injury, as required by the PLRA.

Pursuant to the PLRA, "[n]o Federal civil action may be brought by a prisoner

confined in a jail, prison, or other correctional facility, for mental or emotional injury

suffered while in custody without a prior showing of physical injury." 42 U.S.C. §

1997e(e).[6] Because the statutory phrase "Federal civil action" is unqualified, the statute

"applies to all federal civil actions including claims alleging constitutional violations."

*Thompson v. Carter*, 284 F.3d 411, 416 (2d Cir. 2002); *see also Davis v. District of

Columbia*, 158 F.3d 1342, 1349 (D.C. Cir. 1998) (reasoning that "§ 1997e(e) precludes

claims for emotional injury without any prior physical injury, regardless of the statutory

or constitutional basis of the legal wrong").  This section is not a bar to suit, but instead

operates only as "a limitation on recovery of damages for mental and emotional injury in

the absence of a showing of physical injury." *Thompson*, 284 F.3d at 416.  In *Thompson*,

the Second Circuit made clear that § 1997e(e) "does not restrict a plaintiff's ability to

---

[6] The purpose of § 1997e(e) was "to tie recovery for emotional injury to the existence of a
corresponding physical injury.  It seems that Congress concluded that the existence of a physical injury
would distinguish meritorious prisoner claims of emotional injury from frivolous ones; the physical injury
would, in essence, vouch for the asserted emotional injury.  Congress recognized that, unlike physical
injuries, emotional injuries are inherently difficult to verify and therefore tend to be concocted for
frivolous suits." *Espinal v. Goord*, No. 00 Civ. 2242(AJP), 2001 WL 476070, at *12 (S.D.N.Y. May 7,
2001).

recover compensatory damages for actual injury, nominal or punitive damages, or injunctive and declaratory relief." *Id.*

With this in mind, I start by observing that the relief requested by Defendants—that the claim be dismissed in its entirety due to McGarry's failure to allege physical injury (Doc. 54 at 5-7)—cannot be indulged. Despite the wording of § 1997e(e) (that "[n]o Federal civil action may be brought"), the statute does not bar suit altogether, but instead operates solely as a limitation on damages. *See Thompson*, 284 F.3d at 418 ("Section 1997e(e) purports only to limit recovery for emotional and mental injury, not entire lawsuits"); *see also Lipton v. County of Orange*, 315 F. Supp. 2d 434, 457 (S.D.N.Y. 2004). In other words, the statute limits types of relief, not causes of action. The statutory section itself is entitled: "Limitation on recovery." 42 U.S.C. § 1997e(e). Section 1997e(e) does not contain any limitations on injunctive or declaratory relief, nominal and punitive damages, or damages for a physical injury or mental or emotional injury suffered in addition to the physical injury. Accordingly, dismissal is not a proper remedy for a failure to allege physical injury. Regardless of whether McGarry properly alleges such injury, his request for punitive damages could still go forward; the only issue, at this point, is whether McGarry's claim for compensatory damages is cognizable.

As set out above, to state a proper claim for compensatory damages under the PLRA, McGarry must allege physical injury. As to the extent of physical injury required for recovery of compensatory damages, the statute provides little guidance, given the absence of a definition for the operative phrase "physical injury." The Second Circuit, however, has held that the statute refers to physical injuries that are "more than *de*

*minimis.*"  *See Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999); *see also Warren v. Westchester County Jail*, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000) ("Although the [PLRA] does not define 'physical injury,' the developing case law in this area reflects the view that, consistent with Eighth Amendment jurisprudence, the predicate injury need not be significant but must be more than *de minimis.*"); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997).

McGarry's physical injury, by his description, was a series of infections on his neck that caused him "physical pain as a result of working while sick."  (Doc. 2 at 7.) These infections were "very painful" (Doc. 21 at 1), treated repeatedly with antibiotics, spread to other areas of his body, and ultimately were diagnosed as MRSA, which required surgical intervention (Doc. 24 at 1).  Beyond the allegations in his Complaint and other filings, McGarry has also provided the Court with contemporaneous medical records, which detail a persistent, painful infection that caused swelling of his neck spreading to his shin and upper leg.  (Doc. 23-1; Doc. 24-1.)  The issue is whether McGarry's infection amounts to more than a *de minimis* injury for the purposes of the PLRA.  According to Defendants, "simply contracting an infection does not give rise to a claim for relief as limited by the PLRA."  (Doc. 54 at 6.)  I disagree.

McGarry's MRSA infection qualifies as a sufficient physical injury to permit the recovery of compensatory damages.  As opposed to an acute, one-time injury, McGarry suffered from a persistent infection—by its nature resistant to the antibiotics typically used in treatment—that, after lingering from March to August 2009, ultimately had to be treated surgically.  Though unnecessary at this stage of the litigation (in which we regard

McGarry's factual allegations as true), McGarry has also provided medical records that confirm his diagnosis and course of treatment. Such a long-term and painful condition, which could have resulted in serious harm or even death, constitutes a physical injury that is greater than *de minimis* as contemplated by the PLRA.

A number of courts, both within and outside the Second Circuit, have concluded that analogous (or even less severe) infections constitute "physical injury" under the PLRA. *See Butler v. Suffolk County*, No. 11-CV-2602(JS)(GRB), 2013 WL 1136547, at *9 (E.D.N.Y. Mar. 19, 2013) (concluding that injuries such as respiratory infections and fungal infections qualify as "physical injuries" as contemplated by the PLRA); *Peterson v. Morin*, Civil Action No. C-11-176, 2012 WL 1694775, at *2-3 (S.D. Tex. May 15, 2012) ("persistent ringworm infection" meets requirement of physical injury under PLRA); *Ford v. Bender*, Civil Action No. 07-11457-JGD, 2012 WL 262532, at *15-16 (D. Mass. Jan. 27, 2012) (among other injuries, "cuts and infections" are sufficient to meet the physical injury requirement of the PLRA); *Pierce v. County of Orange*, 526 F.3d 1190, 1224 (9th Cir. 2008) (bed sores and "recurrent bladder infections" are greater than *de minimis* injuries under the PLRA); *McAlphin v. Toney*, 281 F.3d 709, 710 (8th Cir. 2002) ("[S]preading infection in the mouth" was a "serious physical injury" as required by 28 U.S.C. § 1915(g)). In particular, the Second Circuit's decision in *Griffin v. Crippen*, 193 F.3d 89, 92 (2d Cir. 1999), is instructive. In that case, a detainee brought a § 1983 action against correctional officers alleging Eighth Amendment violations based upon their excessive use of force, claiming to have suffered a bruised shin and swelling above his left knee as a result. The District Court dismissed the complaint *sua sponte* on

the basis that the detainee had failed to allege a greater than *de minimis* physical injury.

The Second Circuit reversed, holding that it could not determine "as a matter of law that

[the detainee's] injuries were *de minimis*," *id*. at 92, and thus "dismissal of the excessive

force claim was inappropriate" under the Eighth Amendment, *id*. at 91.[7]  Those acute leg

injuries suffered in *Griffin* do not appear to reach the severity of the infections McGarry

claims to have suffered.  Of course, "at the motion to dismiss stage, the Court cannot, and

need not, conclusively resolve the factual question of whether or not the plaintiff suffered

physical injury."  *Frieson v. City of New York*, No. 11 Civ. 4611(JGK), 2012 WL

1948782, at *2 (S.D.N.Y. May 30, 2012).  But, accepting McGarry's allegations as true

for the purpose of deciding the Motion to Dismiss, his physical injury was greater than *de*

---

[7]  That *Griffin* is grounded in the Eighth Amendment rather than the PLRA does not obviate its relevance here, as the *de minimis* standard applied to the PLRA's physical injury requirement is borrowed from its Eighth Amendment counterpart.  *See Liner v. Goord*, 196 F.3d 132, 135 (2d Cir. 1999) (citing Eighth Amendment as justification for application of *de minimis* standard under PLRA); *Warren v. Westchester County Jail*, 106 F. Supp. 2d 559, 570 (S.D.N.Y. 2000) (application of *de minimis* standard under PLRA is "consistent with Eighth Amendment jurisprudence"); *Siglar v. Hightower*, 112 F.3d 191, 193 (5th Cir. 1997) ("In the absence of any definition of 'physical injury' in the new statute, we hold that the well[-]established Eighth Amendment standards guide our analysis in determining whether a prisoner has sustained the necessary physical injury to support a claim for mental or emotional suffering.").

A number of courts within the Second Circuit have similarly concluded, as a matter of Eighth Amendment doctrine, that injuries either analogous to or less severe than those suffered by McGarry are greater than *de minimis*.  *See, e.g.*, *Atkins v. County of Orange*, 372 F. Supp. 2d 377, 400 (S.D.N.Y. 2005) ("severe" shoulder pain that lasted three to five days "is not *de minimis* as a matter of law"); *Miner v. Ramsey*, No. 99 Civ. 11661(AKH), 2001 WL 540746, at *3 (S.D.N.Y. May 22, 2001) (bruised and swollen wrist, which required that the plaintiff be referred for x-rays, were "not *de minimis* as a matter of law"); *Crawford v. Braun*, No. 99 CIV 5851 RMB JCF, 2001 WL 127306, at *4 (S.D.N.Y. Feb. 9, 2001) (denying summary judgment where plaintiff sustained discoloration of forehead from an alleged blow to the face and swollen wrists from the use of extremely tight handcuffs; plaintiff also alleged he was subjected to force on his arms which he characterized as an attempt to break them); *Davis v. Patrick*, No. 92Civ.0548(BSJ), 2000 WL 1154065, at *2-3 (S.D.N.Y. Aug. 14, 2000) (denying summary judgment where plaintiff alleged he sustained bruises, claw marks, and a blood line on his left arm, and bruises on his neck even though when he was examined the injuries were no longer visible); *Carter v. Kiernan*, No. 98 Civ. 2664(JGK), 2000 WL 760303, at *4-5 (S.D.N.Y. June 12, 2000) (maintaining a swollen ankle, bruised knee, cuts on the wrist and forehead, lumps on the jaw, forearms, and elbow, as well as tenderness of the scalp were more than *de minimis*, and summary judgment was inappropriate).

*minimis* as required by the PLRA.[8]  Accordingly, I recommend that Defendants' Motion to Dismiss be DENIED on this basis.

## III.  Personal Involvement

Next, certain Defendants contend that the claims against them should be dismissed for McGarry's failure to allege their personal involvement in the claimed Thirteenth Amendment violation.  (Doc. 54 at 7-10.)

As a prerequisite to the recovery of damages under 42 U.S.C. § 1983, a plaintiff must allege the personal involvement of each of the individual defendants.  *See Moffitt v. Town of Brookfield*, 950 F.2d 880, 886 (2d Cir. 1991).  A prison official cannot be held personally liable under § 1983 on the basis of *respondeat superior* or simply because he

---

[8]  Defendants argue that McGarry's claims of injury are "speculative at best" because he has failed to allege that his neck infection, suffered while working in the prison laundry, was "associated with his eventual diagnosis of MRSA."  (Doc. 56 at 1.)  The MRSA diagnosis came in June 2009, "at least three months after his work in the prison laundry."  (*Id.* at 2.)  Thus, so Defendant's argument goes, it is "speculation" to attribute McGarry's MRSA to his stint in the prison laundry room.

For starters, it is inaccurate to contend, as Defendants have here, that McGarry has not alleged that he contracted MRSA from his work in the prison laundry.  He has made such an allegation.  In his words: "Plaintiff continues to suffer from recurring MRSA infections after contracting MRSA in jail during his work in the prison laundry as a pretrial detainee."  (Doc. 24 at 1.)  At this stage of the litigation, McGarry does not have to provide evidence or offer any definitive proof of these allegations; he need only satisfy the *Twombly-Iqbal* pleading standard.

As support for their argument, Defendants cite *Wooler v. Hickman County, Kentucky*, Civil Action No. 5:05CV-247-R, 2008 WL 5412826 (W.D. Ky. Dec. 30, 2008), in which a prisoner filed suit under § 1983 claiming that he was exposed to MRSA while in a prison facility.  The MRSA diagnosis did not come until two months after his release.  During discovery, the prisoner's medical expert could not testify to a reasonable degree of medical certainty that he had been infected with MRSA while in prison, because, according to the expert, he could have been exposed to MRSA after his release.  Because the prisoner had been unable to provide evidence as to the element of causation (i.e., that he had contracted MRSA while in prison), the District Court granted summary judgment for the defendants and the Sixth Circuit affirmed.  *Wooler v. Hickman County, Kentucky*, 377 F. App'x 502 (6th Cir. 2010).

On a similar record, summary judgment for Defendants may be appropriate.  But this is not a summary judgment motion; it is a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  As such, the *Twombly-Iqbal* standard applies, and I treat McGarry's factual allegations as true for the purpose of deciding the pending Motion.  McGarry alleges that his prison laundry work caused his infection, and that this same infection was diagnosed as MRSA.  These allegations meet the standard applicable to motions to dismiss.  There is no need for medical expert testimony at the pleading stage.

or she sits atop the prison hierarchy. *See Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995). That being said, direct participation is not strictly necessary. Sufficient personal involvement can be shown by any of five categories of misconduct:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.[9]

*Colon*, 58 F.3d at 873.[10]

## A.    Defendants Gallow, Matthans, Cross, Wolske, and "Various Turnkeys"

According to the allegations in McGarry's *pro se* filings, only five Defendants seem to have been directly involved in the alleged unconstitutional conduct. Defendants Gallow and Matthans, both corrections officers with the Vermont DOC, "supervised inmate employees and discussed work performance-maximizing efficiency." (Doc. 2 at 6.) After McGarry requested a medical excuse note for his infection, Defendant Gallow also informed him that he was "required to work" (*id*.), and assigned McGarry to his laundry job (Doc. 22 at 1). Defendant Cross "woke McGarry promptly at 6 am and told him to pick up . . . laundry." (Doc. 2 at 6.) Defendant Wolske, as well as Defendant

---

[9] Defendants make no argument that any of these categories of liability have been abridged by the Supreme Court's opinion in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), so I will not address that issue.

[10] In its decision, the Second Circuit addressed the personal involvement inquiry only to say that "[t]he adequacy of the complaint in this regard is best considered in the first instance by the district court." *McGarry v. Pallito*, 687 F.3d 505, 509 n.3 (2d Cir. 2012).

"various . . . turnkeys," also "supervised aspects of McGarry's work, and kept notes in

the unit log book." (*Id*.) Of these Defendants, only Cross appears to have moved to

dismiss on this basis,[11] alleging that he was not personally involved because he merely

"woke Plaintiff up every morning before work." (Doc. 54 at 7.)

Direct participation in the alleged constitutional violation is the first method by

which to establish personal involvement as required for maintenance of suit under §

1983. As stated, all five of these Defendants were directly involved in the alleged

Thirteenth Amendment violation. Regardless of the extent of their involvement—from

waking McGarry up for work to supervising and keeping notes of his work activity—

each Defendant identified above played a direct role in ensuring that McGarry continued

his work in the prison laundry room. Indeed, Wolske specifically told McGarry that if he

refused to work he would be sent to administrative segregation, while Gallow explained

DOC policy that refusal to work would potentially affect "if and when an inmate may get

out of jail after he has served his minimum sentence." (Doc. 2 at 5.) Given their direct

_____

[11] I say "appears" because, although only Cross originally moved to dismiss (Doc. 54 at 7), in their reply Defendants assert that all of the officers McGarry claims were directly involved "are not alleged to have taken any actions forcing Plaintiff to work or to remain in the unit where work was performed" (Doc. 56 at 4). In the reply, however, these Defendants do not actually request that the case against them be dismissed, so I defer to the listing of Defendants in the original Motion to Dismiss. The Second Circuit has made clear that it disfavors new issues being raised in reply papers. *See Keefe v. Shalala*, 71 F.3d 1060, 1066 n.2 (2d Cir. 1995) (stating that normally the court "will not consider arguments raised for the first time in a reply brief"); *Knipe v. Skinner*, 999 F.2d 708, 711 (2d Cir. 1993) (stating that "[a]rguments may not be made for the first time in a reply brief"); *Nat'l Labor Relations Bd. v. Star Color Plate Serv.*, 843 F.2d 1507, 1510 n. 3 (2d Cir. 1988) (rejecting a party's "attempts to raise for the first time [a new issue] in its reply brief"). This is particularly appropriate given that Defendants specifically offered, in their original motion, that Officers Gallow, Matthans, and Wolske all could "conceivably be deemed to have been personally involved in the conduct that forms the basis for Plaintiff's claims." (Doc. 54 at 7.)

participation, there is no basis on which to recommend dismissal of suit as to these Defendants.

### B.     Defendants Sorrell, Cushing, Cobb, and Byrne

Beyond direct participation, additional Defendants, based upon McGarry's allegations, appear to have been informed of McGarry's alleged involuntary servitude and failed to remedy his work condition after receiving such notice.  According to McGarry, he wrote a letter to Vermont Attorney General William Sorrell detailing "that he was forced to work via threat of punishment involving segregation and a [disciplinary report]," but "got no response from Sorrell."  (Doc. 2 at 7.)  McGarry also wrote a letter to the Vermont Department of Labor "about the unlawful practice of involuntary servitude at CRCF" (*Id*. at 8), and received a letter from Defendant Evelyn Cushing indicating that legal counsel had informed her that "inmates who performed labor . . . were not subject to FLSA" (*Id*. at 9).  In the prison facility, McGarry filed a grievance with Defendant Cobb, which ultimately worked its way up to Defendant Byrne, who rejected the grievance because "it [was] incomplete in that it d[id] not mention any grievable event or provide information that c[ould] be investigated."[12]  (*Id*. at 7)  In the period after this rejection, McGarry continued to work and "suffered physical pain as a result of working while sick."  (*Id*.)  After re-writing his grievance and appealing its subsequent rejection, McGarry again grieved his forced work to Defendant Byrne, who cited DOC policy that permitted treating pretrial detainees and convicted prisoners alike for the purposes of work assignments.  (*Id*.)  After this second grievance, however, Byrne

---

[12]  Defendant Wolske also reviewed McGarry's initial grievance.  (Doc. 2 at 7; Doc. 21-1 at 2.)

did ultimately move McGarry to a housing unit where he was no longer required to work. (*Id.*)[13]

A second method of establishing personal involvement is to allege that a defendant was informed of the constitutional violation and did nothing to right the wrong. *See Colon*, 58 F.3d at 873. However, "[n]umerous courts have held that merely writing a letter of complaint does not provide personal involvement necessary to maintain a § 1983 claim." *Candelaria v. Higley*, No. 04-CV-277A, 2008 WL 478408, at *2 (W.D.N.Y. Feb. 19, 2008) (collecting cases). "It is equally clear that allegations that an official ignored a prisoner's letter [are] not enough to establish personal involvement" for purposes of section 1983. *Atkins v. County of Orange*, 251 F. Supp. 2d 1225, 1233 (S.D.N.Y. 2003) (citing *Johnson v. Wright*, 234 F. Supp. 2d 352, 363 (S.D.N.Y. 2002)); *see also Burgess v. Morse*, 259 F. Supp. 2d 240, 248 (W.D.N.Y. Apr. 23, 2003). Likewise, if a defendant refers or forwards such a letter to another staff member, personal involvement still cannot be shown. *See Goris v. Breslin*, 402 F. App'x 582, 584 (2d Cir. 2010) (affirming dismissal of case where personal involvement "was limited to the receipt of two letters from [plaintiff], which [defendant] promptly referred to other individuals for investigation and response"); *Garvin v. Goord*, 212 F. Supp. 2d 123, 126 (W.D.N.Y. 2002); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). "The reason for this rule appears to be the fact that high-level DOC officials delegate the task of reading and responding to inmate mail to subordinates, and, thus, a letter sent to such an official often does not constitute actual notice." *Voorhees v. Goord*, No. 05 Civ.

---

[13] McGarry has filed his grievance documents under seal with this Court. (Doc. 21-1 at 1-5.)

1407(KMW)(HBP), 2006 WL 1888638, at *5 (S.D.N.Y. Feb. 24, 2006); *see also Inesti v. Hogan*, No. 11 Civ. 2596(PAC)(AJP), 2013 WL 791540, at *13 (S.D.N.Y. Mar. 5, 2013). "If courts found personal involvement every time a supervisor forwarded a complaint to a subordinate, the requirement [of personal involvement] would lose all meaning." *Mateo v. Fischer*, 682 F. Supp. 2d 423, 430 (S.D.N.Y. 2010). In light of this purpose—ensuring the letter or grievance provides notice—it is also clear that if the official in question actually "does personally look into the matters raised in the letter, or otherwise acts on the prisoner's complaint or request, the official may be found to be personally involved." *Rivera v. Fischer*, 655 F. Supp. 2d 235, 238 (W.D.N.Y. 2009) (citations omitted); *see also Anderson v. Ford*, Civ. No. 3:06CV1968 (HBF), 2007 WL 3025292, at *6-7 (D. Conn. Oct. 16, 2007); *Mateo*, 682 F. Supp. 2d at 430-31; *Brooks v. Chappius*, 450 F. Supp. 2d 220, 226 (W.D.N.Y. 2006).

In the instant case, the facts alleged in the Complaint do not indicate that Sorrell was personally involved in any of the asserted constitutional violations. Based upon McGarry's allegations, Sorrell seems to have completely ignored his request for assistance. Under the preceding doctrine, the letter did not provide him with actual notice of the claimed constitutional violation, and thus does not establish his personal involvement. Accordingly, the claim against Defendant Sorrell should be DISMISSED.

The grievances to Defendants Cobb and Byrne, however, do appear to satisfy this inquiry. Both Defendants responded to the multiple grievances, rejecting McGarry's first request for help, and, after the second grievance, moving McGarry to a different housing unit where work was not required. In the interim, McGarry claims to have continued to

suffer injury by having to work while sick.  (Doc. 2 at 7.)  The grievance documents filed

with this Court confirm the steps that Defendant Byrne took in investigating the

grievance, which included speaking directly with a number of individuals, including

McGarry.  (Doc. 21-1 at 4.)  As stated, such personal engagement with an inmate's

grievance creates the requisite personal involvement for maintenance of a § 1983 claim.

      In a similar vein, the letter from Defendant Cushing at the Department of Labor

established her personal involvement.  According to McGarry's allegations, she directly

responded to his inquiry, informing him that, based upon the advice of legal counsel at

the Department of Labor, he was not subject to FLSA and thus was not entitled to

payment of the minimum wage.  (Doc. 2 at 9.)  At this stage, such a response is sufficient

to establish her personal involvement.

### C.      Defendants Pallito and Hale

      Defendants Pallito and Hale, the Commissioner of Corrections and the CRCF

Superintendent, respectively, are alleged to have continued a policy of permitting the

involuntary servitude of pretrial detainees.  In his Complaint, as well as in subsequent

filings, McGarry has cited and provided the relevant statements of DOC policy.

Specifically, DOC Policy 392, entitled "Inmate Work Policy," sets out the authority and

purpose of various inmate work programs (Doc. 17-1), and DOC Policy 394, entitled

"Inmate Wage Plan," sets out the DOC compensation policy (Doc. 17-2).[14]  In none of

---

[14]  All policies governing offender work programs are also available at the DOC's webpage.
*Available at* http://www.doc.state.vt.us/about/policies/rpd/correctional-services-301-
550/corr_services#work

these policies is any distinction drawn between pretrial detainees and convicted prisoners; all inmates are treated the same for the purposes of the work program.

As stated at the outset, personal involvement of defendants may be shown by the allegation that they either promulgated or continued a policy that permits unconstitutional practices to occur. *See Williams v. Smith*, 781 F.2d 319, 323 (2d Cir. 1986). Liability may be premised upon the adherence to a formal, written policy, *see, e.g.*, *Duchesne v. Sugarman*, 566 F.2d 817, 830-31 (2d Cir. 1977), or "[a] policy or custom may be inferred from acts or omissions of supervisory officials serious enough to amount to gross negligence or deliberate indifference to the constitutional rights of the plaintiff," *Eng v. Coughlin*, 684 F. Supp. 56, 65 (S.D.N.Y. 1988) (citing *Villante v. Dep't of Corr. of the City of New York*, 786 F.2d 516, 519 (2d Cir. 1986)); *see also Turpin v. Mailet*, 619 F.2d 196, 201 (2d Cir. 1980) ("We see no reason why an official policy cannot be inferred from the omissions of a municipality's supervisory officials, as well as from its acts."). When imposing § 1983 liability based upon adherence to a policy or custom, "[i]t is not necessary . . . that the [supervisors] directed any particular action with respect to these specific individuals, only that they affirmatively promoted a policy which sanctioned the type of action which caused the violations." *Duchesne*, 566 F.2d at 831.

There is little doubt, in the case at bar, that Defendants Hale and Pallito, in their supervisory capacities, permitted continued adherence to DOC policy that sanctioned the allegedly-unconstitutional conduct. In responding to McGarry's grievance, Defendant Byrne specifically cited DOC Policy 392 in reaching his conclusion that "McGarry's employment at the CRCF was based on approved policy and practice." (Doc. 21-1 at 5.)

DOC Policy 392 empowers facility superintendents, such as Hale, "[t]o develop formal work assignments and maintain daily duty rosters" and authorizes the placement of inmates into "laundry services." (Doc. 17-1 at 1-2.) DOC Policy 394 also authorizes superintendents to set the compensation rate for inmates at their facility, but "[c]ash compensation or cash credit shall not exceed $.25/hour or its equivalent per day." (Doc. 17-2 at 1.)[15] Vermont statutes give the Commissioner of Corrections, Defendant Pallito, the authority "[t]o exercise supervisory power over and to establish and administer programs and policies for the operation of the correctional facilities of the department, and for the correctional treatment of persons committed to the custody of the commissioner." 28 V.S.A. § 102(b)(2). The Commissioner is also charged with the responsibility "[t]o make rules and regulations for the governing and treatment of persons committed to the custody of the commissioner" and "[t]o establish within the department programs for inmates to participate in work." 28 V.S.A. §§ 102(c)(1) & (18). As such, Defendant Pallito plays a supervisory role in the policymaking at the Department of Corrections. *But see Brody v. McMahon*, 684 F. Supp. 354, 356 (N.D.N.Y. 1988) (declining to hold members of New York Commission of Corrections liable for conditions at prison where Commission operated solely as "watchdog" agency and had not "direct power to control or direct the customs and policies of the facilities"); *see also Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 737 (1989) ("whether a particular official

---

[15] Byrne also states that he "Spoke with Superintendent Greg Hale" in reaching a decision on McGarry's grievance (Doc. 21-1 at 4), further contributing to Hale's personal involvement in the case at bar.

has 'final policymaking authority' is a question of *state law*." (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123 (1988))).

Given the undisputed, continuing existence of the DOC policies permitting work by pretrial detainees such as McGarry, there is no need to inquire into Pallito or Hale's role in McGarry's particular case. *See Duchesne*, 566 F.2d at 831. Both Defendants were personally involved on the basis of DOC policy regarding offender work programs, their continued role in administering this policy, and their failure to change it. "This Circuit recognizes that inaction, as well as action, on the part of State officials may trigger liability under section 1983." *Williams v. Ward*, 553 F. Supp. 1024, 1026 (W.D.N.Y. 1983) (citing *Dushesne*, 566 F.2d at 832).[16]

## D. Defendants Cannon, "CO Forcier," Santos, Liff, and "Various Attorneys"

The remaining Defendants—John Cannon, "CO Forcier," Samuel Santos, Michael Liff, and "Various Attorneys" at the Vermont Department of Labor—appear not to have been involved, in any way, in the alleged Thirteenth Amendment violation. The allegations against Cannon include that he was involved in a proposed April 2009 transfer that would have returned McGarry to House 1 and required him to work, but this

---

[16] As Defendants correctly point out in their reply, McGarry, in his response to the Motion to Dismiss, does not challenge dismissal on the basis of personal involvement as to certain of these Defendants. (Doc. 56 at 3.) The failure to oppose a motion to dismiss, however, "does not, by itself, justify dismissal." *Burnham v. United States Customs*, No. 2:12-cv-157, 2013 WL 1345154, at *1 (D. Vt. Apr. 2, 2013) (citing *Goldberg v. Danaher*, 599 F.3d 181, 183-84 (2d Cir. 2010). "[T]he sufficiency of a complaint is a matter of law that the court is capable of determining based on its own reading of the pleading and knowledge of the law." *Goldberg*, 599 F.3d at 184 (citing *McCall v. Pataki*, 232 F.3d 321, 322-23 (2d Cir. 2000)).

transfer was never consummated.[17]  (Doc. 2 at 8.)  The same allegation is made against

Liff regarding a later proposed transfer.  (*Id*.)  "CO Forcier" is alleged to have

confiscated mail from McGarry, but this allegation relates solely to his constitutional

claims that have already been dismissed.  (*Id*. at 3.)  Both Santos and Liff are alleged to

have been involved in the violation of McGarry's right to counsel (*id*. at 4), but this

claim, similarly, has been dismissed.  As stated, the only remaining claim is McGarry's

Thirteenth Amendment claim related to his work in the prison laundry from February to

March 2009, and none of these four Defendants are alleged to have had any involvement

in the events giving rise to that claim.  As for Defendant "Various Attorneys" at the

Vermont Department of Labor, McGarry has alleged no facts from which one could infer

personal involvement in the instant case.  Although Cushing cited the advice of counsel

in her response to McGarry's inquiry, such engagement by unnamed and unknown

counsel is too removed from McGarry's case to meet the pleading standard as to their

personal involvement.  Accordingly, I recommend that the claims against these

Defendants be DISMISSED for lack of personal involvement.

     In summary, I recommend that Defendants' Motion to Dismiss on the basis of a

lack of personal involvement be GRANTED with respect to Defendants Sorrell, Cannon,

"CO Forcier," Santos, Liff, and "Various Attorneys," but DENIED as it relates to all

remaining Defendants.

---

[17]  McGarry also vaguely claims that Cannon is a "shift supervisor" and therefore "had personal involvement by instructing corrections officers what to do, and what the correct practices are."  (Doc. 17 at 3.)  Without more, such conclusory allegations, particularly where *respondeat superior* liability is inapplicable, do not satisfy the pleading standard.

## Conclusion

For the reasons set out above, I recommend that Defendants' Motion to Dismiss for failure to allege physical injury (Doc. 54) be DENIED. In addition, I recommend that Defendants' Motion to Dismiss on the basis of personal involvement (Doc. 54) be GRANTED with respect to Defendants Sorrell, Cannon, "CO Forcier," Santos, Liff, and "Various Attorneys," but DENIED as it relates to all remaining Defendants.

Dated at Burlington, in the District of Vermont, this 22nd day of May, 2013.

/s/ John M. Conroy
John M. Conroy
United States Magistrate Judge

Any party may object to this Report and Recommendation within fourteen days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections which shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate's decision." *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15, 16 (2d Cir. 1989).